Date signed March 24, 2008



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore**

| | | |
|---|---|---|
| **In re:** | : | |
| **Garcia Edward Johnson** | : | **CASE NO. 05-13865-DK** |
| | | **CHAPTER 13** |
| **Debtor.** | : | |

_____

**MEMORANDUM OF DECISION**

Before the court is SunTrust Bank's Motion for Reconsideration of Motion to Dismiss or Convert Debtor's Chapter 13 Petition on Remand from District Court (the "Motion to Reconsider"). The parties have briefed the remaining issues in the case and filed a joint statement requesting that the court decide the matter based upon the current status of the record, and without further hearing. The court has reviewed the evidence admitted previously, as well as all the legal memoranda and agrees that further hearing will not aid the decisional process.

**Background**

Debtor commenced this voluntary chapter 7 case, by counsel, on February 22, 2005. He filed his Schedules along with his petition. Schedule A reflected that he owned no real property and Schedule B reflected the Debtor's ownership of two vehicles– a 1992

Chevy Truck and a 1998 Chevy Truck.  Schedule D reflected secured creditors for both vehicles.  In addition, Schedule F listed SunTrust Bank ("SunTrust") as an unsecured creditor in the amount of $21,687.00, with the description of its claim provided as "11/2003 Vehicle destroyed by fire."  Debtor has made no amendments to these Schedules.

Approximately a month after the filing of the bankruptcy case, SunTrust filed a motion for relief from stay.  In that motion, SunTrust requested relief from the automatic stay in order to "repossess and sell" a 2003 Chevrolet Truck C1500 (the "Vehicle").  However, several weeks later, SunTrust filed a motion to depose Debtor pursuant to Federal Rule of Bankruptcy Procedure 2004[1] (the "2004 Exam Motion").   The 2004 Exam Motion stated that SunTrust had learned at the Debtor's recent Rule 341 meeting of creditors, that Debtor alleged that the Vehicle had been stolen and burned.  However, SunTrust further represented that Debtor testified at that 341 meeting that he was suspected to have been involved in the destruction of the Vehicle (and had pled guilty to some related charge), and therefore the insurer had refused to pay for the loss of the Vehicle.  The court granted the 2004 Exam Motion and SunTrust conducted its examination of the Debtor on May 6, 2005.

On May 10, 2005, within the limitations period for such actions,[2] SunTrust filed a Complaint seeking to deny Debtor his discharge under Section 727(a)(5)[3] of the Bankruptcy

---

[1] Hereafter, all references to Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

[2] Rules 4004(a) and 4007(c) provide, respectively, that in chapter 7 liquidation cases, complaints objecting to discharge and complaints to determine the nondischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors.

[3] Section 727(a)(5) provides: "The court shall grant a discharge, unless-- (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this

Code[4] or in the alternative to find that the debt owed to SunTrust was nondischargeable pursuant to Section 523(a)(6).[5]  Debtor failed to file an answer or otherwise respond to the Complaint and on July 8, 2005, the court entered an Order by default finding that the debt owed by Debtor to SunTrust was nondischargeable.

Meanwhile, shortly before entry of the court's default Order in the adversary proceeding by SunTrust, Debtor converted his bankruptcy case from a chapter 7 case to one under chapter 13.  SunTrust neither opposed the Debtor's motion to convert the case to chapter 13, nor filed a motion to reconvert.  Instead on August 8, 2005, SunTrust moved for relief from the automatic stay to pursue Debtor in state court to collect on the nondischargeable debt.  However, on August 25, 2005, SunTrust withdrew its motion, perhaps realizing that the motion was without merit because debts found to be nondischargeable in a chapter 7 case pursuant to Section 523(a)(6) were nonetheless dischargeable upon completion of a chapter 13 plan and entry of a discharge under Section 1328(a).[6]

The Debtor's initial chapter 13 plan proposed to pay 36 monthly installments of

---

paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

[4]  Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code.

[5]  Section 523(a)(6) provides: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – for willful and malicious injury by the debtor to another entity or to the property of another entity."

[6]  This case was filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 11 Stat. 23, which became effective October 17, 2005 and in most instances is applicable only to cases filed after the effective date.  Under BAPCPA, the so-called "super-discharge" was limited.  Under the new provisions, not all debts described in Section 523(a)(6) are dischargeable in a chapter 13.

$100 to the chapter 13 trustee for distribution to creditors. The trustee filed an objection stating that Debtor had failed to produce certain necessary documents and the trustee opposed confirmation. In addition, seven days prior to the scheduled confirmation hearing, SunTrust filed a motion to dismiss case or motion to re-convert to chapter 7 (the "Motion to Dismiss"). At the October 11, 2005 hearing upon confirmation, the court denied confirmation of the Debtor's plan with leave to amend and noted that the issues of bad faith raised in SunTrust's motion should be set for an evidentiary hearing.

Debtor filed his amended plan on October 25, 2005, which plan proposed 60 monthly payments of $160.[7] The court held a contested evidentiary hearing on confirmation on February 15, 2006 (the "Confirmation Hearing") and ruled that the plan should be confirmed and that SunTrust's Motion to Dismiss would be denied. In its oral ruling, the court opined that Debtor had satisfied the requirements for confirmation under Section 1325, including the requirement of Section 1325(a)(3) that "the plan has been proposed in good faith and not by any means forbidden by law." The court specifically stated that the mere existence of a debt that would be nondischargeable in a chapter 7 did not require a finding of bad faith in a chapter 13 case. The court disagreed with SunTrust that the prepetition conduct of a debtor which would give rise to a nondischargeable debt should mandate *per se* that the court make a finding either that the chapter 13 case fails for reason of bad faith or that the case should be automatically reconverted for "cause." Rather, the court found that Debtor had proposed a plan which sought to devote all disposable income to payment of

---

[7] The amended plan was further amended by line filed on January 25, 2006, to clarify payments already made and stating that Debtor would pay $100 for the first three months, $160 for the next three months and then $200 for the remaining 54 months.

- 4 -

creditors for the maximum time and that he appeared to be making a good faith effort to repay creditors.[8]

SunTrust timely appealed the Order denying the Motion to Dismiss to the United States District Court for the District of Maryland.  On December 4, 2006, the District Court entered an Order reversing the bankruptcy court and remanding the case.  The District Court further recommended that the matter be stayed pending the outcome of a case being decided by the United States Supreme Court on the issue of whether a chapter 7 debtor has an automatic right to convert to chapter 13.  The District Court in its Memorandum Opinion reasoned that the bankruptcy court's conclusion that the conversion of the case to chapter 13 was by right, caused it to erroneously limit its good faith analysis only as to the provisions of the chapter 13 plan.  The District Court held that the bankruptcy court's review of the Debtor's prepetition conduct was insufficient to properly determine whether Debtor should be entitled to the protection afforded him from the nondischargeability of the debt to SunTrust.

Upon remand to the bankruptcy court, the matter was stayed per the recommendation of the District Court.  On February 21, 2007, the United States Supreme Court issued its decision in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105 (2007).  The Court held that a chapter 7 debtor whose wrongful prepetition conduct would

---

[8] In its oral ruling, the court summarized Section 706(a) stating that a chapter 7 debtor who had not previously converted his case had an absolute right to convert his case to chapter 13.  The United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105 (2007) subsequently limited the right of a debtor to convert a case to chapter 13.  The court notes, however, that such a holding would not have impacted the court's decision at the time because SunTrust had never filed an opposition to the Debtor's motion to convert or timely sought reconversion.

otherwise make him ineligible to remain in chapter 13 under Section 1307(c) did not have an automatic right to convert to chapter 13 and was not included in the class of "honest but unfortunate" debtors whom the bankruptcy laws were enacted to protect. *Id.* at 1111.

After the ruling in *Marrama*, SunTrust filed the instant Motion to Reconsider seeking a ruling per *Marrama* that the Debtor's prepetition conduct amounted to cause for reconversion or dismissal under Section 1307(c) and therefore the conversion of the case to chapter 13 amounted to an abuse of process.

## **Analysis**

As an initial matter, the court finds the opinion in the *Marrama* case not directly applicable. SunTrust did not oppose Debtor's motion to convert this case to chapter 13 nor sought reconsideration of the conversion of the case within any reasonable time pursuant to Rules 9023[9] or 9024.[10] The matter to be decided is not whether the Debtor's motion to convert to chapter 13 should have been granted. The matter before the court upon remand is whether or not the chapter 13 plan of the Debtor should be confirmed, or to the contrary SunTrust's motion to reconvert the case to chapter 7, or dismiss the case, should be granted. On remand, this court will review all factual evidence and legal arguments anew.

Section 1325 provides, *inter alia*, that "Except as provided in subsection (b), the court shall confirm a plan if – . . . (3) the plan has been proposed in good faith and not by

---

[9] Rule 9023 provides that with limited exception, Federal Rule of Civil Procedure 59 is applicable in bankruptcy cases. Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment shall be filed within 10 days after the entry of the judgment.

[10] Rule 9024 states that except as otherwise provided, Federal Rule of Civil Procedure 60 is applicable to bankruptcy cases. Federal Rule of Civil Procedure 60(b) and (c) sets forth the grounds and timing for a proper motion for reconsideration brought under that rule.

any means forbidden by law." 11 U.S.C. § 1325(a)(3). As noted in the decision of *Deans v. O'Donnell,* 692 F.2d 968, 969 (4th Cir. 1982), good faith is not defined in the Section 1325. The Court of Appeals further stated:

> [w]hile no precise definition can be sculpted to fit the term 'good faith' for every Chapter 13 case, we think the generally accepted definition of 'good faith' as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976)(repealed), provides the general parameters: . . . 'Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provision, purpose, or spirit of [the Chapter] in the proposal or plan. . . .'

*Id.* at 972 (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed.1978)).

The Court of Appeals also discussed good faith in the chapter 13 confirmation context in another opinion, *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986). In that case, the Court of Appeals held that the plan must be proposed in good faith as set forth in Section 1325(a). The Court re-enumerated factors from its earlier decision in *Deans v. O'Donnell,* and then added an additional factor. These factors included, among others, employment history, unsecured claims, past bankruptcy filings, honesty in the schedules, any exceptional circumstances facing the debtor, what changes had occurred, the economic basis for the current case, the motivation of the debtor in the current case, and the prepetition conduct of the debtor. *Id.* at 152-53. The Court of Appeals added that prepetition wrongful conduct, including conduct that created a debt that is not dischargeable in a chapter 7, should be considered. With this last factor added, the Court of Appeals ruled that an inquiry must be made "to determine whether or not, considering 'all militating factors,' there has been 'an abuse of the provisions, purpose, or spirit' of Chapter 13 in the proposal or plan.' " *Id.* at 152 (quoting *Deans v. O'Donnell,* 692 F.2d at 972).

As previously stated by this court in its oral ruling, the mere existence of a debt that would be nondischargeable in a chapter 7 case does not *per se* require a finding that the chapter 13 case or the plan filed therein is being prosecuted in bad faith.

Congress has mandated that some debts which are not dischargeable in a chapter 7 may be discharged in a chapter 13 case. This result is inconsistent with any *per se* rule. Pursuant to Section 1328(a)(2) as applicable to this case, a discharge granted at the successful completion of a confirmed plan would include debts arising as a result of willful and malicious injury to an entity or an entity's property. Subsequent to the filing of this case (and inapplicable to this issue), the BAPCPA, *see* fn. 6, narrowed this discharge to exclude willful and malicious injury to an entity (which includes a person). 11 U.S.C. § 1328(a)(4). However even under the more narrowly drawn Section 1328(a)(2) contained in BAPCPA, Congress continues to provide for the discharge of a debt arising from willful and malicious injury to property. Because Congress has drawn a distinction between harm to persons and harm to property it can be reasoned that Congress intended that chapter 13 would be available to those debtors who had committed prepetition willful and malicious harm to property, provided that the court finds from the preponderance of the evidence, including the facts of the prepetition conduct, that the debtor filed or converted the case as a chapter 13 and proposed the plan in good faith. 11 U.S.C. § 1325(a)(7) and (a)(3).

As a result of the remand the court is required to review the evidence *de novo*, applying all of the applicable factors enunciated in the *Neufeld* decision and without any assumption that the Debtor had an absolute right to convert the case to chapter 13. As to the prepetition conduct of Debtor herein, the court finds that Debtor was convicted of a crime

and undisputably committed a wrong by willfully and criminally destroying property for a deceitful purpose.  Debtor did not merely cause destruction to the Vehicle, he committed such act with the intent of escaping his obligation to SunTrust and defrauding his insurance company.  Though the existence of Debtor's guilt is *res judicata* and as stated earlier the court rejects any notion that it must deny confirmation based solely upon that prepetition act, the Debtor's untruthfulness continued into this case.  After a full review of the evidence in the record, including the evidence accumulated by investigators at the time of the conduct and the Debtor's guilty plea, it appears that the allegations against Debtor for willful destruction of property were strongly supported.

   Officer Stephen Taylor, the auto theft investigator from the Anne Arundel County police department testified at the Confirmation Hearing.  Officer Taylor investigated the disappearance of Debtor's Vehicle after Debtor's insurance company notified him that Debtor reported to it that the Vehicle had been stolen.  Officer Taylor stated that a detailed review of the surveillance videos of the parking lot and during the timeframe from which Debtor claimed the vehicle was stolen, did not show that the vehicle had been parked there.[11]  Further the Officer questioned Debtor about discrepancies in his statements such as why he reported the vehicle stolen 45 minutes prior to the time when he told the Officer that he returned the parking lot to retrieve it.[12]

   Another witness, Mr. Henneman, was qualified as an expert in the area of the investigation of insurance fraud.  He testified to the examination of the Vehicle once it was

---

[11]  Tr. of 2/15/06 Hearing, at 35.

[12]  Tr. of 2/15/06 Hearing, at 36.

found and that the Vehicle had no signs of forced entry.[13]  Further he noted that Debtor had purchased another vehicle the day before reporting the subject Vehicle stolen and that the new vehicle was purchased just about a mile or two from the spot where the burned Vehicle was found.[14]

Despite abundant evidence, coupled with his actual guilty plea, the Debtor intentionally testified before this court at the Confirmation Hearing that the Vehicle had been stolen.[15]  After a full review the court finds under a preponderance of the evidence standard that Debtor's testimony before this court was untruthful.

Consideration of the other of *Neufeld* factors is also to be given weight.  Debtor testified that his employment history had been fairly stable, though he had been fired from a job after pleading guilty to the charge involving the Vehicle.  He had obtained other employment and the court was convinced at the Confirmation Hearing that Debtor's employment situation favored confirming his chapter 13 plan.  Debtor did not have significant unsecured claims beyond SunTrust, but there were unsecured creditors which would benefit from a chapter 13 payment plan and Debtor had proposed a plan with the maximum 60 month duration.[16]  There are no records of past bankruptcy filings by Debtor

---

[13]  Tr. of 2/15/06 Hearing, at 44.

[14]  Tr. of 2/15/06 Hearing, at 44-45.

[15]  Tr. of 2/15/06 Hearing, at 14-16.  Debtor testified at the 2004 Examination under oath that he had no involvement in the theft of the Vehicle and asserted his 5th Amendment right not to testify as to the question of whether he was involved in the destruction of the Vehicle. SunTrust Exhibit 1, of 2/15/06 Hearing (5/6/05 Dep. Tr.), at 61.

[16]  The current record is unclear as to whether Debtor has indeed committed all of his disposable income to the plan. It appears from the Debtor's testimony at the Confirmation Hearing that Debtor is committing his income to vehicle payments for his girlfriend.  Tr. of 2/15/06

and no issues were raised by any party or the trustee that the Debtor's schedules were not accurate.

SunTrust avers that the Debtor converted the case in bad faith only after it was evident that a judgment of nondischargeability on the SunTrust debt would be entered. However, this court rejects any rule holding that a debtor who initially files a chapter 7 case and subsequently converts the case once the holder of an alleged nondischargeable debt chooses to pursue the nondischargeability litigation is *per se* bad faith.

Congress has indicated that for certain types of debts described in Section 523(c), the debt will be discharged unless a complaint is filed within the allowable time period under Rule 4007.  Therefore a debtor may choose to file a chapter 7 case and should a complaint not be filed, to take advantage of this statutory opportunity to receive a discharge of such a debt.  However, the court's review of all the evidence in this case supports its instant finding that Debtor's motives and conduct in this case have lacked integrity and that Debtor was not choosing chapter 13 out of a need to protect other secured property (such as a residence) or out of desire to repay his creditors.  In fact, as to SunTrust, Debtor had stopped making payments to SunTrust even prior to the destruction of the Vehicle[17] and there is no evidence that he made any attempt to notify SunTrust of the loss of its collateral prior to bankruptcy.

Because on reconsideration the court finds that under the principals of *Neufeld v. Freeman*, the Debtor has not demonstrated good faith to support confirmation, the Order

---

Hearing, at 22.

[17] Tr. of 2/15/06 Hearing, at 19.

Confirming Plan must be vacated. Furthermore, because the court now finds that Debtor will be unable to confirm a plan in chapter 13, "cause" exists pursuant to Section 1307(c) to support the reconversion of this case to chapter 7.

      Orders in conformity with this opinion shall be entered together herewith.

cc:    Debtor
        Debtor's counsel
        Counsel for SunTrust Bank
        Chapter 13 Trustee
        Office of United States Trustee
        All creditors and parties in interest
        all counsel

**End of Opinion**